# M     O     N     T     A     G     E

**SUBCONTRACT AGREEMENT**                              **Montage, Inc.**

**THIS SUBCONTRACT**, made this <u>14 November 2017</u>, by and between Montage, Inc. (hereinafter "MONTAGE") and <u>Veyka Construction and Engineering</u> (hereinafter "Subcontractor").

## WITNESSETH:

**WHEREAS, MONTAGE** and <u>Department of State</u> (hereinafter "Owner", as used herein, includes all Owner's representatives, including as appropriate, the architect), have entered into a Contract ("Prime Contract") for the implementation of <u>FY17 MSGR Expansion/Renovation, SAQMMA-17-R0514</u> (hereinafter "Project").

**WHEREAS, MONTAGE** desires to subcontract certain part of work specified in <u>USG Contract Documents Dated January 18, 2017, Amendment 1 dated July 26, 2017, Amendment 2 dated August 7, 2017</u> and subcontractor desires to perform said work at the prices and upon the terms and conditions hereinafter expressed.

**NOW, THEREFORE**, in consideration of the mutual agreements herein expressed, the Parties do contract as follows:

## 1. SCOPE OF WORK

1.1 Subcontractor's obligations: Subcontractor shall provide complete construction services, coordination and supervision, including but not limited to management, and construction necessary to meet the requirements of the contract in accordance with the above referenced Contract Documents. All construction for this project must be in accordance with the technical requirements as identified in Contract Documents. Subcontractor will perform all work and furnish all labor, materials, equipment, scaffolding, tools, supervision, supplies, security, applicable taxes, freight, insurance and all other things necessary for the construction and completion of MSGR Expansion/Renovation project, including works ("Works") outlined in Attachment #1 and defined in <u>USG Contract Documents and Dated January 18, 2017, Amendment 1 dated July 26, 2017, Amendment 2 dated August 7, 2017</u>, Except the provisions as it is specifically provided by the terms of this Subcontract and its Attachments with respect to special conditions to be applied by and between the subcontractor and MONTAGE, subcontractor shall have the rights against MONTAGE which MONTAGE has against the Owner under its contract with the Owner, and subcontractor shall assume towards MONTAGE all obligations, risks and responsibilities which MONTAGE has assumed towards Owner in its Contract with the Owner. Subcontractor will not be harmed or held liable for deficiencies outside his scope of work or control. Work hours are noted in Division 1 and can be adjusted only if it is limited per local labor law, or if decided to be necessary for completion of works, in agreement by both parties and the Owner. These hours of work in no way alleviates the subcontractors' responsibility to complete work on schedule.

1.2 Montage's obligations: Montage's duties as the Prime Contractor are defined under Prime Contract, as well as its share in the scope is defined under Attachment 1. Montage, in addition to carrying out the scope items on Attachment 1, as the possessor of site, and as the Prime Contractor, as in direct contact with the Owner, will pursue for the overall project management, communication interface and relationship with the Owner's Contracting Officers and client technical personnel.

## 2. CONTRACT PRICE

2.1 MONTAGE agrees to pay subcontractor for the satisfactory performance of subcontractor's Work, subject to additions and deductions by change order of other Subcontract provisions as well as the Prime Contract, the total; 8,008,418.00 (Eight Million Eight Thousand Four Hundred Eighteen Dollars)+VAT Applicable in Sudan. (Base Bid: $7,908,418.00 + Option for adding 1 full time Site Engineer to Veyka crew $100,000.00) in accordance with section 4. The Subcontract price includes all taxes imposed by Sudan.

## 3. PAYMENT

3.1 Progress Payments. Progress payments shall be due subcontractor in the amount of 90.0% of the work in place which MONTAGE and Owner have approved. For the purpose of determining progress payments, subcontractor shall furnish MONTAGE, before its first application for progress payment, a Schedule of Values satisfactory to MONTAGE. If MONTAGE disapproves of subcontractor's Schedule of Values, MONTAGE shall establish a reasonable breakdown which shall be the payment basis.

3.2 Stored Materials. Unless otherwise provided, subcontractor shall be paid its progress payments in the amount of 90.0% of the value of stored materials duly delivered. Approval of payment for such stored items on or off site shall be based on submission by subcontractor of evidence of quantity and value to MONTAGE and Owner to protect Owner's and MONTAGE's interest in such materials and equipment, including transport to the site.

3.3 Time of Payment. Subcontractor shall submit progress payment applications in a form as directed under the Prime Contract no later than the 1st day of each payment month for work performed up to and including the last day of the previous payment period, indicating completed percentage of Work, materials suitable stored during the preceding payment period. The corresponding subcontractor invoices will be dated 5th day of each payment month.

All progress payments will be made to the subcontractor within 7 days of receipt of payment from the Owner to Montage. Subcontractor shall be entitled to ask for recovery on cost and time damages of delays caused by Montage resulting in untimely payment. For the avoidance of doubt this provision shall be applicable for the duly delivered materials which are set forth under above article 3.2.

3.4 Failure of Subcontractor to Make Payment. Subcontractor shall ensure that all its subcontractors, employees, and suppliers are paid all amounts due in connection with this Subcontract. MONTAGE may withhold corresponding calculated amount of any progress payment until subcontractor submits evidence satisfactory to MONTAGE that all amounts due in connection with this Subcontract have been paid. Further, in its sole discretion, MONTAGE may pay any and all persons who have not received payment due in connection with this Subcontract.

3.5 Partial Lien Wavier and Affidavits. When required by MONTAGE, subcontractor shall provide, in a form satisfactory to MONTAGE and Owner, partial lien or claim waivers and affidavits from Subcontractor and its subcontractors and suppliers for all prior payments to subcontractor as part of each request for partial payment other than the initial request.

3.6 Right to Withhold Payment. MONTAGE may withhold amounts otherwise due under this Subcontract or due under any other contractual arrangement between the parties to compensate MONTAGE for costs MONTAGE has incurred or may incur for which subcontractor may be responsible hereunder.

Appropriate adjustments to withholding shall be made when the exact amounts owed hereunder are determined.

3.6 <u>Right to Withhold Payment in terms of Retention</u>.  MONTAGE shall be entitled to retain up to fifteen percent (10.0%) of all sums that are due to the subcontractor as progress or other payments as security towards due performance of the contract by the subcontractor until corresponding Work is handed over. In the case of phased delivery, the amount withheld shall be released at the completion of each phase and handed over to Owner. No other securities in terms of bonds or letter of bank guarantees other than retention shall be applicable.

3.7 <u>Final Payment</u>.  Final payment for subcontractor shall be made after; (1) subcontractor's Work has been completed and approved by Owner; (2) evidence satisfactory to MONTAGE that subcontractor has satisfied all payrolls, bills for materials and equipment, and all known indebtedness connected with Subcontractor's work; (3) the entire Project is certified complete by the Owner; (4) MONTAGE has received from the sub-contractor a complete set of as built drawings and warranties.

3.8 <u>Purchase Orders for Foreign Materials</u>: Montage, in order to support subcontractor for the financing of project: (1) will issue the purchase orders for U.S. oriented materials on behalf of subcontractor by negotiating payments due at least 30 days after material delivery, (2) will request payment from client for ordered materials upon start of shipment for that material (3) will support subcontractor on the approval of schedule of values submitted by subcontractor.

## 4.  SCHEDULE OF WORK

4.1 <u>Time of Performance</u>.  Subcontractor will proceed with the Work in a prompt and diligent manner, in accordance with MONTAGE's directives and MONTAGE's schedule, revised if necessary, as the work progresses.  **TIME IS OF THE ESSENCE**.  Subcontractor shall not be entitled to additional compensation for compliance with schedule revisions, except to the extent that the change in schedule shall not affect staffing, workforce size, material procurement and logistics scenarios of subcontractor. Duration of this contract is 24 months (minimum 15 months for construction) from Final Notice to Proceed to be issued to subcontractor. Except as specifically provided under the Subcontract or its Attachments, subcontractor is bound to Montage to the same extent that Montage is bound to USG, for all time, quality, safety, security and contract controls.

4.2 <u>Subcontractor's Schedule</u>.  If requested by MONTAGE, subcontractor shall submit to MONTAGE a detailed schedule for performance of the Work, in a form acceptable to MONTAGE, which shall comply with all scheduling requirements of the Contract Documents and of Section 4.1 above.  MONTAGE may request subcontractor to make reasonable modifications and revisions in said schedule.

4.3 <u>Priority of Work</u>.  Subcontractor will coordinate its work with the work of MONTAGE, other subcontractors and Owner's other builders, if any, to prevent or mitigate delays or interferences in the completion of any part or all of the Project.  MONTAGE shall have the right to decide the time, order and priority in which various portions of the work shall be performed and all other matters relative to the timely and orderly conduct of subcontractor's work.

## 5. SUBCONTRACTOR'S LIABILITY

5.1 Scope. Subcontractor shall be liable to MONTAGE for all direct costs MONTAGE incurs against the owner as a result of Subcontractor's failure to perform the subcontract in accordance with its terms. Subcontractor's failure to perform shall include the failure of its suppliers and/or subcontractors, of any tier to perform. Subcontractor's liability shall include, but not be limited to (1) direct damages and other delay costs payable by MONTAGE to Owner, (2) MONTAGE's increased performance costs, such as extended overhead and increased performance costs resulting from Subcontractor-caused delays or improper Subcontractor work; (3) warranty and rework costs; (4) liability to third parties, including other subcontractors of MONTAGE (5) excess costs of re-procurement. (6) attorney's fees and related costs of resolving disputes with Subcontractor related to Subcontractor's performance

## 6. CHANGES AND CLAIMS

6.1 Changes. MONTAGE may, either unilaterally or by direction of Owner, without notice to sureties, make changes in the work covered by this subcontract at any time. Any changes to the subcontract shall be in writing and Subcontractor shall perform the work, as changed, without delay, in accordance with the agreed schedule. If Subcontractor does not submit a price quotation within seven (7) days to MONTAGE for changes requested by Owner, MONTAGE may use its best estimate of the proposed change as it affects Subcontractor in its quotation to Owner, which estimate shall be the maximum amount due Subcontractor for such work.

6.2 Claims. Any claims for adjustment in price, time or other Subcontract provisions, shall be submitted to MONTAGE, in writing, in sufficient time for MONTAGE to submit claims to owner in accordance with the Contract Documents. If directed by MONTAGE, Subcontractor shall certify the completeness and accuracy of its claim as a condition to its consideration by MONTAGE or Owner.

6.3 Claims Relating to Owner. If Subcontractor submits a claim to MONTAGE arising out of or relating to problems caused by or which are the responsibility of the Owner, Subcontractor agrees to be bound to MONTAGE to the same extent that MONTAGE is bound to Owner by the terms of the Contract Documents and by any and all decisions or determinations made by a Court of the party or board so authorized in the Contract Documents to decide disputes between MONTAGE and Owner, whether or not Subcontractor is a party to such proceedings. MONTAGE shall be liable to Subcontractor for no more than Subcontractor's equitable share of any recovery from Owner. MONTAGE agrees to present to the owner, in MONTAGE's name, and, if necessary, invoke the disputes provision of the Contract Documents for all Subcontractor's claims for extras and equitable adjustments, timely submitted, whenever the Contract Documents permit MONTAGE to do so, and MONTAGE reasonably believes such claim is valid. Subcontractor agrees to furnish all documents, statements, witnesses and other information required by MONTAGE for investigating and presenting Subcontractor's claims and to pay or reimburse MONTAGE for all expenses and costs including legal fees, if any, incurred in connection with Subcontractor's claims. MONTAGE has final authority to settle all claims submitted to the Owner. No dispute shall interfere with the progress of construction and the Subcontractor shall continue with its work as directed.

6.4 Claims Relating to Montage. If Subcontractor submits a claim to MONTAGE arising out or in relating to problems caused by or which are responsibility of MONTAGE, Subcontractor agrees that only direct and indirect costs related to the damage shall be acceptable, provided that all supporting documentation to justify the claim is supplied along with the claim. Such claims shall be resolved within no later than thirty (30) days by Montage.

6.5 <u>Owner Damages</u>.  Subject to 5.1 above, If the Owner recovers liquidated or other damages against MONTAGE, then MONTAGE may assess against the Subcontractor the portion of the Owner's damages that represent the Subcontractor's share of the responsibility. The amount of such assessment for Owner damages shall not exceed the amount assessed against MONTAGE plus the portion of costs and attorney's fees MONTAGE incurred in defending against the Owner's claim for damages arising out of or in relation to the Subcontractor's work which subcontractor failed to perform as per its duties.

6.6 <u>Work Continuation</u>.  If any problem or dispute arises between MONTAGE and Subcontractor as to interpretation of the requirements of this Subcontract, which MONTAGE and Subcontractor do not promptly resolve, Subcontractor shall proceed in accordance with the interpretation and direction of MONTAGE and prosecute the work diligently and without delay, provided that the problem or disputed matter is not causing a material impact on the continuity of the works.  Any claims by Subcontractor shall be submitted in accordance with procedures established in Section 6 of this Subcontract.  During all disputes, actions at law, suits in equity, claim proceedings, and any other matters in question arising out of, or relating to this Subcontract, the Contract, Contract Documents, or the breach of any of them, the Subcontractor shall carry on the work and maintain progress on completing the project in accordance with the construction schedule, provided that the problem or disputed matter is not causing a material impact on the continuity of the works, and unless otherwise agreed to between MONTAGE and Subcontractor, in writing.

## 7.  INSPECTION AND ACCEPTANCE

7.1 <u>Inspection of Work</u>.  Subcontractor shall provide appropriate facilities at all reasonable times for inspection by MONTAGE or Owner of the work and materials provided under this Subcontract, whether at the Project site or at any place where such work or materials may be in preparation, manufacture, storage, or installation.

7.2 <u>Correction of Defective Work</u>.  Subcontractor shall promptly replace or correct any work or materials which MONTAGE or Owner shall reject as failing to conform to the requirements of this Subcontract. If Subcontractor does not commence replacement or corrections within 3 (three) working days, MONTAGE shall have the right to do so and Subcontractor shall be liable to MONTAGE for the cost thereof. If, in the opinion of Owner, it is not expedient to correct or replace all or any part of rejected work or materials, then MONTAGE, at its option, may deduct from the payments due, or to become due, to Subcontractor, such amounts as, in OWNER's judgement, will represent: (1) the difference between the fair value of the rejected work and materials and the value thereof, if it complied with this Subcontract: or (2) the cost of correction, whichever is higher.

7.3 <u>Acceptance</u>.  The work shall be accepted by Owner according to the terms of the Contract Documents. However, unless otherwise agreed in writing, entrance and use by Owner or MONTAGE shall not constitute acceptance of the work subject to Substantial Completion (as defined under the Prime Contract) is in place.

## 8.  SUBMITTALS

8.1 <u>Timely Submission</u>. Subcontractor shall timely prepare and submit to MONTAGE all shop drawings, manufacturers' literature, samples and material lists as may be necessary to describe completely the details and construction of its work under the Contract Documents. Such submittals shall be made in sufficient time so as not to delay performance of the Project. For scheduling and timeliness, Subcontractor shall account a maximum of 10 days for MONTAGE (or Project A/E) response, and a maximum of 30 days for Owner response; collectively a maximum of 40 days shall be accounted for a

final response to each submittal. Any deviation from the Contract Documents shall be clearly identified in the shop drawings, and so stated, in writing, in separate correspondence. Approval of such shop drawings shall not relieve the Subcontractor of its obligation to perform such work in strict accordance with the Contract Documents, nor of its responsibility for the proper matching and fitting of its work with contiguous work.

8.2 Status. Subcontractor shall furnish daily progress reports on its work, including information on the status of materials and equipment under this Subcontract, which may be in the course of preparation or manufacture.

8.3 Confidentiality. Subcontractor stipulates that it will hold in the strictest confidence and refrain from divulging all information which it may acquire with respect to Montage or its client.

## 9. CLEANUP

9.1 Unless MONTAGE otherwise directs or agrees, Subcontractor shall, at its own expense, clean and remove from the Project all rubbish and debris resulting from the performance of its work and, at the completion of its work in each area of the Project, perform such cleaning as may be required. Such removal shall be done in a manner that will impede neither the progress of the Project nor other trades.

## 10. LAWS, PERMITS, FEES AND PATENTS

10.1 Compliance. Subcontractor shall give all notices and comply with all laws, ordinances, rules, and regulations bearing on the performance of its work on the Project. Subcontractor shall secure and pay for all permits and Governmental fees (except for all building permits, construction licenses and street use permits to be acquired by MONTAGE), licenses, and arrange inspections necessary for the proper execution and completion of Subcontractor's work. Subcontractor shall be duly licensed to operate under the laws of the applicable jurisdictions.

10.2 Hold Harmless. Subcontractor agrees to hold MONTAGE harmless against the payment of any and all losses, costs, expenses, contributions, taxes, or premiums which may become due or payable under Federal, State or local laws arising out of Subcontractor's failure to comply with the laws outlined in Section 10.1 above, including any interest or penalties. Subcontractor waives any and all claims for additional compensation because of any increase in taxes, contributions or premiums unless Owner pays MONTAGE such increases incurred by Subcontractor.

## 11. HEALTH AND SAFETY

11.1 Responsibility of Subcontractor. As relates to the Subcontractor's work, Subcontractor is responsible for the safety of the general public or workers engaged on or in the vicinity of the Project. Subcontractor agrees to comply with all Federal, State, Municipal and local laws, ordinances, rules, regulations, codes, standards, orders, notices, and requirements concerning safety, as shall be applicable to the work.

11.2 Stoppages Ordered by MONTAGE. When so ordered by MONTAGE, Subcontractor shall stop any part of the work which MONTAGE deems is unsafe until corrective measures, satisfactory to MONTAGE, have been taken, and Subcontractor agrees that it shall not have nor make any claim for damages growing out of such stoppages. Should Subcontractor neglect to take such corrective measures which are due to reasons attributable to the Subcontractor, MONTAGE may do so at the cost and expense of Subcontractor and may deduct the cost thereof from any payments due or to become due to

Subcontractor. Failure on the part of MONTAGE to stop unsafe practices shall not be deemed an acceptance or acquiescence by MONTAGE of Subcontractor's means or methods of construction and shall in no way relieve Subcontractor of its responsibility.

11.3 Hazardous Material. In the event the Subcontractor encounters, on the Project, material reasonably believed to be a hazardous substance such as, but not limited to, asbestos or polychlorinated biphenyl (PCB) which has not been rendered harmless, the Subcontract shall immediately stop work in the area affected and report the condition to MONTAGE in writing. The work in the affected area shall not thereafter be resumed except by written agreement between MONTAGE and Subcontractor if, in fact, the material is a hazardous substance, such as asbestos or PCB, and has not been rendered harmless. The work in the affected area shall be resumed in the absence of hazardous substances or when it has been rendered harmless pursuant to an equitable adjustment issued in accordance with Section 7 of the Subcontract.

## 12. REPRESENTATION, INTERPRETATION AND INVESTIGATION

12.1 Representations and Investigation. Subcontractor represents that it is fully qualified to perform this Subcontract. Subcontractor acknowledges that prior to the execution of this Subcontract, it has: by its own independent investigation ascertained: (1) the work required by the Subcontract: (2) the conditions involved in performing the work: and (3) the obligations of the Subcontract and the Contract Documents; and (4) verified all contractual information furnished by MONTAGE or others and satisfied itself. Any failure by the Subcontractor to independently investigate and become fully informed will not release Subcontractor from its responsibilities under this Subcontract, unless such information is at the sole possession of MONTAGE and has not been communicated with the Subcontractor. On the other hand, Subcontractor will not be expected to verify the correctness and/or completeness of the design or any other procedural information provided by MONTAGE or the OWNER, which will be deemed correct and followed by the Subcontractor.

12.2 Interpretation. Subject to the terms and provisions of this Subcontract with respect to the Work on this Project to be performed and furnished by the Subcontractor hereunder are intended to be and shall be in addition to and not in substitution for any terms and provisions of the Prime Contract and Contract Documents. The parties intend that all terms of this Subcontract, the Contract and Contract Documents are to be considered as complementary. However, in the event of a conflict between or among the terms of this Subcontract, the Contract or the Contract Documents, the Subcontract terms and conditions shall prevail.

12.3 Inconsistencies and Omissions. Should inconsistencies or omissions appear in the Contract Documents, the Subcontractor shall notify MONTAGE and identify the inconsistency or omission, in writing, within three (3) working days of the Subcontractor's discovery thereof. Upon receipt of Subcontractor's Notice, MONTAGE shall instruct the Subcontractor as to the measures to be taken, if any, and the Subcontractor shall comply with MONTAGE's instructions.

12.4 Field Measurements. Notwithstanding the dimensions given on the plans, specifications and other contract documents, it shall be the obligation and responsibility of the Subcontractor to take such measurements as will ensure the proper matching and fitting of the work covered by this Subcontract and contiguous work.

## 13. TERMINATION FOR CONVENIENCE

13.1 <u>Contractor's Right to Terminate</u>. MONTAGE shall have the right to terminate this Subcontract, without cause, for convenience, when MONTAGE determines that it is in its own best interests to so terminate the Subcontract. In such case termination, termination for convenience clauses of the Prime Contract between Owner and MONTAGE shall apply vis-a vis to the Subcontractor.

## 14. SUBCONTRACTOR'S FAILURE OR INABILITY TO PERFORM

14.1 <u>Causes for Termination</u>. If, Subcontractor shall, with negligence or fault: (1) refuse or fail to provide sufficient properly skilled workmen or materials of the proper quality: (2) fail in any respect to prosecute the Work according to the current schedule: (3) cause, by any action or omission, the stoppage or delay of, or interference with, the work of MONTAGE or of any other builder or Subcontractor: (4) submit a false or misleading lien or claim waiver: (5) fail to make payments to sub-Subcontractors, employees and suppliers, or (6) otherwise fail to comply with all provisions of this subcontract or the contract documents then, after serving ten (10) days written Notice, unless the condition specified in such Notice shall have been eliminated within such ten (10) days, MONTAGE, at its option:

    a.   Without voiding the other provisions of this Subcontract, may take such steps as are necessary to overcome the condition, in which case the Subcontractor shall be liable to MONTAGE for all consequent cost, plus interest, and reasonable attorney's fees thereof:

    b.   Terminate the Subcontract for default: or

    c.   Seek specific performance of Subcontractor's obligations hereunder, it being agreed by Subcontractor that specific performance may be necessary to avoid irreparable harm to MONTAGE and/or Owner.

<u>Demand for Assurance</u>. In the event MONTAGE becomes concerned about Subcontractor's ability to continue performance, MONTAGE may demand adequate assurance from Subcontractor or its successors in interest of timely future performance of the Subcontract. Failure to comply with such a demand within three (3) days of receipt of the demand shall entitle MONTAGE to terminate Subcontractor for default. The Subcontractor shall immediately notify MONTAGE if Subcontractor learns or in any way has reasonable cause to suspect that the Subcontractor or any of its sub-Subcontractors at any tier has incurred or shall incur a change in its financial condition which would adversely affect the Subcontractor's ability to perform under this Subcontract or any sub-Subcontractor's ability to perform under its sub-subcontract with the Subcontractor.

14.2 <u>MONTAGE's Rights upon Termination for Default</u>. In the event of termination for default under Sections 14.1 and 14.2 above, MONTAGE may, at its option: (1) enter on the premises and take possession, for the purpose of completing any work, of all materials and equipment of Subcontractor for which Subcontractor is duly paid; (2) require Subcontractor to assign to MONTAGE any or all of Subcontractor's subcontracts and purchase orders involving the Project; or (3) either itself or through others complete the work by whatever method MONTAGE may deem expedient. In case of termination for default, Subcontractor shall not be entitled to receive any further payment until the work shall be fully completed and accepted by the Owner. At such time, if the unpaid balance of the price to be paid exceeds the expense incurred by MONTAGE, such excess shall be paid by MONTAGE to Subcontractor. If such amount due MONTAGE shall exceed such unpaid balance, then Subcontractor shall pay MONTAGE the difference and reasonable attorney's fees.

## 15.  WARRANTY

15.1 Scope of Warranty. Subcontractor warrants to the Owner and MONTAGE that all materials and equipment furnished shall be new, unless otherwise specified, and that all work under this Subcontract shall be of good quality, free from faults and defects and in strict conformance with the Contract Documents.  All work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective. This warranty shall be in addition to, and not in limitation of, any other warranty or remedy required by law or by the Contract Documents.

15.2 Term. Subcontractor warrants its work for the same period as MONTAGE warrants the work to the Owner under the Contract Documents.  If the Contract Documents do not state a specific warranty period, the Subcontractor warrants its work for a period of one year from the date of Substantial Completion of the entire Project.

## 16.  NOT USED

## 17.  INDEMNIFICATION

17.1 Subcontractor's Performance.  the Subcontractor shall indemnify and hold harmless the Owner, MONTAGE from and against all claims, direct damages, direct losses and expenses, provided that:  (1) any such claim, damage, loss, or expense is attributable to bodily injury, sickness, disease, or death, or to injury to or destruction of tangible property (other than the Subcontractor's work itself) including the loss of use resulting therefrom, to the extent caused or alleged to be caused in whole or in any part by any negligent act or omission of the Subcontractor or anyone directly or indirectly employed by the Subcontractor of anyone for whose acts the Subcontractor may be liable, regardless of whether it is caused in part by a party indemnified hereunder, and (2) such obligation shall not be constructed to negate, or abridge, or otherwise reduce any other right or obligation of indemnity which would otherwise exist as to any party or person described in this Section

17.2 No Limitation Upon Liability. In any and all claims against the Owner, MONTAGE (including its affiliates, parents and subsidiaries) and other contractors or subcontractors, or any of their officers, directors, agents or employees, by any employees of the Subcontractor, anyone directly or indirectly employed by the Subcontractor or anyone for whose acts the Subcontractor may be liable, the indemnification obligation under this Section 18 shall not be limited in any way by any limitation on the amount or type of damages, compensation or benefits payable by or for the Subcontractor under Worker's or Workmen's Compensation Acts, disability benefit acts or other employee benefit acts.

## 18.  LABOR POLICY

18.1 Project Personnel.  Subcontractor and its sub-subcontractors or suppliers shall not employ anyone engaged in Subcontract work whose employment may be objected to by MONTAGE or Owner.

18.2 Work Stoppage.  Should any workers performing work covered by this Subcontract engage in a strike or any other stoppage or cease to work due to picketing or a labor dispute of any kind, said circumstances shall be deemed a failure to perform the work on the part of the Subcontractor due to the conditions and terms set forth in Section 14, unless immediate remedial actions are not taken in 5 days and recovery plans are not provided by Subcontractor to recover the lost time.

## 19. ASSIGNMENT AND SUBCONTRACTING

19.1 <u>Assignment</u>. Subcontractor agrees that it will not transfer, assign or delegate the complete Subcontract, or any payment due thereunder, without the written prior consent of MONTAGE, which consent shall not be unreasonably withheld.

19.2 <u>Subcontractors</u>. The Subcontractor shall not subcontract the whole or part of this Subcontract without the prior written consent of the Contractor. Subcontractor agrees that all sub-subcontractors and lower-tier suppliers and subcontractors will be subject to all terms and conditions of this Subcontract and the Contract Documents. MONTAGE's consent to any subletting shall not be deemed to create any contractual relationship between MONTAGE and any sub-subcontractor or supplier to whom the work or any portion thereof is sublet.

19.3 <u>Additional Information</u>. At MONTAGE's request, the Subcontractor shall promptly deliver to MONTAGE accurate lists of all sub-subcontractors and suppliers retained in connection with the Project, as well as copies of all contracts with such parties, redacted to Subcontractor's commercial privacy requirements. MONTAGE shall have the right to contact such sub-subcontractors and suppliers to verify any matter, other than regarding subcontractor's commercial privacies, related to the Project and this Subcontract.

## 20. PRIVITY

20.1. Until this Subcontract is complete and final payment is made, Subcontractor shall not, without the written consent of MONTAGE, perform any work at U.S. Embassy Compound in Khartoum, Sudan directly for Owner or the Owner's tenants. Subcontractor agrees that all work on this Project shall be handled and processed by MONTAGE and that Subcontractor will not communicate directly with the Owner's representatives without MONTAGE's consent.

## 21. ARBITRATION

21.1 <u>Agreement to Arbitration</u>. Subject to Section 7.3 entitled "Claims Relating to Owner", unless the parties mutually agree otherwise, or the Contract Documents state otherwise, all claims, disputes and matters in question arising out of, or relating to, this Subcontract, of the breach thereof, shall be decided by arbitration, which shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association then in effect.

21.2 <u>Notice of Demand</u>. Notice of a demand for arbitration shall be delivered, in writing, to the other party to this Subcontract and shall be filed with the Washington, D.C. Office of the American Arbitration Association. A demand for arbitration shall be made within a reasonable time following written Notice of the claim, dispute or matter in questions.

21.3 <u>Award</u>. The award rendered by the arbitrator(s) shall be final and judgment may be entered upon it in accordance with applicable law in any court having jurisdiction.

21.4 <u>Work Continuation and Payment</u>. Unless the parties mutually agree otherwise, Subcontractor shall carry on its work pending arbitration. If Subcontractor carries on its work and otherwise complies with the Subcontract, MONTAGE shall continue to make progress payments in accordance with this Subcontract.

## 22. NOTICE

22.1 All Notices shall be addressed to the parties at the addresses set out herein and shall be considered as delivered when postmarked, if dispatched by registered mail, or when received in all other cases.

## 23. ADVERTISING

23.1 Subcontractor shall not place any signs, billboards or posters on any portion of the Project site, building, property or fences (temporary or permanent) surrounding the same, except upon prior written permission received from MONTAGE, and then only of a size, material, color and type and at a location approved by MONTAGE.

## 24. SEVERABILITY AND WAIVER

24.1 The partial or complete invalidity of any one or more provisions of this Subcontract shall not affect the validity or continuing force and effect of any other provision. The failure of either party hereto to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Subcontract, or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or rights as respects further performance.

## 25. COMPLETE AGREEMENT

25.1 This Subcontract is solely for the benefit of signatories hereto and represents the entire and integrated agreement between the parties hereto, and supersedes all prior negotiations, representations, or agreement either written or oral.

## 26. TITLES

26.1 The titles given to the Sections of this Subcontract are for ease of reference only and shall not be relied upon or cited for any other purpose.

IN WITNESS WHEREOF, the parties, by their duly authorized representatives, have hereunto executed this Subcontract on the day and year above written.

By: _____  11/18/17          SERHAT KAPLAN   11/14/17
Montage, Inc.            Date                   VEYKA Construction Inc.    Date

Sina Moayedi
_____                         _____
Print Name                                      Print Name

Vice President                                  PROGRAM MANAGER
_____                         _____
Title                                           Title

Witness:
_____                         _____

**ATTACHMENT 1**
**SUBCONTRACTOR SCOPE OF WORK and Exclusions**
Design/Build MSGR Expansion Project, United States Embassy, Khartoum, Sudan
OBO Contract No: SAQMMA-17-R-0514

The subcontractor covenants, promises, and agrees to furnish all necessary construction for a full and complete supervision, labor, materials, tools, supplies, equipment, testing, safety equipment required to diligently and fully perform and complete the works required per DD Design Package Dated Sep 21st, 2016 drawings, with exclusions below. Following list of exclusions are hereby incorporated into contract:

1. Any guarantees and insurance required to be provided to the client including bond, DBA insurance, and general liability insurances. Veyka will be liable for the worker's compensation insurances and health insurances for their employees.
2. Design preparation, coordination, changes and timely providing design related clarifications and submittal reviews. Veyka will be afforded sufficient and timely access to development of design, for incorporation of construction methodology, phasing and specific selected materials by Veyka to design package.
3. Construction design package required for securing construction license.
4. Montage specific Deliverables (Subcontractor to prepare any deliverable related to its scope).
5. Key personnel as required to be provided by Montage in accordance with specifications. In addition, lodging, transportation, and meals are excluded for the above referenced key personnel.
6. Veyka will provide two furnished 20' containerized offices, In accordance with section 015005 "Temporary Facilities & Controls". Additionally, all items as listed in section 015005 "Temporary Facilities & Controls" are included in Veyka's contract.
7. Overall project management, safety management, quality management, site superintendence required by the prime contract. and adequate/required liaison and document exchange with client on related issues. This excludes the staff of 2 Veyka Managers that will provide QC / Safety and services for Veyka. Montage will not be responsible for day to day management of Veyka crews.
8. Submitting all officially required schedules (Veyka will provide schedule updates to Montage for submission to client).
9. Overall safety management, guiding subcontractor on safety, and liaison with client on safety matters and safety documentation. Veyka shall assure sufficient level of work quality and safety on site, according to prime contract.
10. Providing escorts when required, all required CSTE, overall security management, guiding subcontractor on security management, and liaison with client on security related matters. Veyka is obligated to Montage in same way as Montage is obligated to OBO, and in case of requirements outside the scope of work, Montage is obligated to submit any reasonable claims it receives from Veyka.
11. Overall QC management, guiding subcontractor on QC, and liaison with client on QC matters and preparation of safety documentation requested by prime contract. Veyka shall assure sufficient level of work quality and safety on site, as required per contract.
12. Utility charges, if applicable, from Client. Veyka is obligated to Montage in same way as Montage is obligated to OBO, and in case of requirements outside the scope of work, Montage is obligated to submit any reasonable claims it receives from Veyka.
13. Preparation of warranty management agent, close-out process management. Veyka is to provide warranty services as required by this Contract.
14. Whenever required, providing certified US technicians for commissioning, handover and signing-off for each individual system to be commissioned. Veyka shall carry out the commissioning process and activities.

Any increase in subcontractor's cost, caused due to change in design details of the same scope; while the designs are being developed by Montage's design consultant, shall be borne equally by Montage and the subcontractor. To maximize cost and time effectiveness of construction, Montage agrees to include Veyka in the design process as a reviewer and contributor. Veyka is obligated to Montage in same way as Montage is obligated to OBO, and in case of requirements outside the scope of work Montage is obligated to submit any reasonable claims it receives from Veyka.